# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| [1]  RATHBONE, LLC, on behalf of itself and all others similarly situated and on behalf of XTO Energy, Inc., | § § § § | |
| Plaintiffs, | § | |
| vs. | § § | 5:08-CV-01370 |
| [2] XTO ENERGY, INC., | § | Judge Joe Heaton |
| [3] BOB R. SIMPSON, | § | |
| [4] KEITH A. HUTTON, | § | |
| [5] VAUGHN O. VENNERBERG, II, | § | |
| [6] WILLIAM H. ADAMS, III, | § | |
| [7] LANE G. COLLINS, | § | |
| [8] PHILLIP R. KEVIL, | § | |
| [9] JACK P. RANDALL, | § | |
| [10] SCOTT G. SHERMAN, | § | |
| [11] HERBERT D. SIMONS, | § | |
| [12] LOUIS G. BALDWIN, | § | |
| [13] TIMOTHY L. PETRUS, and | § | |
| [14] GARY D. SIMPSON, | § § | |
| Defendants. | § | |

## BRIEF IN SUPPORT OF
## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION TO DISMISS

## TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENTS AND AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    VENUE IS PROPER IN THE WESTERN DISTRICT OF OKLAHOMA.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    THE COMPLAINT PROPERLY STATES A SHAREHOLDER'S
            DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTIES.  . . . . 5

            1.    PLAINTIFF'S PRE-SUIT DEMAND WAS ADEQUATE.  . . . . . . 5

            2.    THE COMPLAINT STATES A CLAIM FOR A SHAREHOLDER
                  DERIVATIVE ACTION AS TO ALL DEFENDANTS  . . . . . . . . 7

            3.    APPROPRIATE CHOICE OF LAW IS UNCLEAR AT THIS STAGE
                  OF LITIGATION.
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            4.    UNDER OKLAHOMA, DELAWARE AND ARKANSAS LAW,
                  DEFENDANTS OWE THE HIGHEST FIDUCIARY DUTY TO
                  PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            5.    XTO'S DEMAND DENIAL IS CONCLUSORY AND SILENT ON
                  THE ISSUES OF WHETHER XTO EVER WRONGFULLY PAID
                  SALES TAX IN ARKANSAS AND WHETHER XTO IS ENTITLED
                  TO A REFUND FROM THE STATE OF ARKANSAS. XTO IS NOT
                  ENTITLED TO CLOAK THESE ISSUES FROM JUDICIAL
                  INQUIRY BEHIND THE BUSINESS JUDGMENT RULE.  . . . 11

      C.    THE COMPLAINT WARRANTS APPLICATION OF A MODIFIED
            BUSINESS JUDGMENT RULE OR OTHER ENHANCED LEVEL OF
            JUDICIAL SCRUTINY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    AT A MINIMUM THE COURT SHOULD ALLOW DISCOVERY ON THE
            REASONABLENESS OF XTO'S INVESTIGATION AND DEMAND
            DENIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      E.    XTO'S ATTEMPT TO CLOAK DIRECTORS WITH IMMUNITY FOR
            THEIR NEGLIGENCE IN THE BYLAWS IS NOT APPROPRIATE TO
            CONSIDER ON A MOTION TO DISMISS UNDER FRCP 12 (B)(6).  . 17

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**Cases**

*Allison v. General Motors Corp.*, 604 F.Supp. 1106 (D.Del. 1985) . . . . . . . . . . . . . . 6, 7

*Aronson v. Lewis* 473 A.2d 805, 813 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Ashcroft v. Iqbal,* __U.S. __, 129 S.Ct.1937, 1960, 173 L.Ed.2d 868 (2009) . . . . . . . . . 3

*Beard v. Love,* 2007 OK CIV APP 118, 173 P.3d 796 . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Behradrezaee v. Dashtara,* 910 A.2d 349 (D.C. Ct. App. 2006) . . . . . . . . . . . . . . . . . . 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Bohannan v. Allstate Ins. Co.*, 820 P.2d 787 (Okla. 1991) . . . . . . . . . . . . . . . . . . . . . . 10

*Bohannan v. Allstate Ins.Co.,* 820 P.2d 787 (Okla. 1991) . . . . . . . . . . . . . . . . . . . . . . . 18

*Church of Scientology of Calif. v. Flynn,* 744 F.2d 694 at 696, n.2 (9th Cir. 1984) . . . . . . 2

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . 3

*Country Home Products, Inc. v. Schiller-Pfeiffer, Inc.*, 350 F.Supp.2d 561, 568 (D.Vt. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Emerald Partners v.  Berlin*, 787 A.2d 85, 91(Del. 2001) . . . . . . . . . . . . . . . . . . . . . 11, 15

*Evans v. Paulson,* 2006 WL 3702669 (D. Minn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fagin v. Gilmartin*, 432 F.3d 276, 285 n. 2 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 10

*Hall v. Staha,* 314 Ark. 71, 858 S.W.2d 672, 676 (1993) . . . . . . . . . . . . . . . . . . . . . . . 11

*Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re  PSE & G Shareholder Litigation,* 173 N.J. 258, 801 A.2d 295 (2002.) . . . . . 13, 14

*In re The Walt Disney Co. Derivative Litig.,* 852 A.2d 275 (Del. Ch. 2003) . . . . . . . . . 17

*Janssen v. Flanagan,* 662 N.W. 2d 876 (Minn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 778 (Tex.App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Klein v. FPL Group, Inc.,* 2003 WL 22768424 (S. D. Fla. 2003) . . . . . . . . . . . . . . . . . . 16

*Kloha v. Duda,* 226 F.Supp. 1342 (M.D. Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Raines v. Toney,* 228 Ark. 1170, 1178, 313 S.W.2d 802  (1958) . . . . . . . . . . . . . . . . . . 11

*Scheuer v. Rhodes,* 416 U.S.232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974) . . . . . . . 2, 3

*Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Stepak v. Anderson,* 20 F.3d 398 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Swierkiewicz v. Sorema,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d. 1 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Timpanogos Tribe v. Conway,* 286 F.3d 1195, 1204 (10th Cir. 2002) . . . . . . . . . . . . . . . 2

*Wilson v. Harlow,* 860 P.2d 793 at 798 (Okla. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zapata v. Maldonado,* 430 A.2d 779 (Del. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Zeligson v. Hartman-Blair, Inc.* 135 F.2d 874 (10th Cir. 1948) . . . . . . . . . . . . . . . . . . . 17

## **Rules**

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 15

Fed. R.Civ.P. 12(b) (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 17

Rule B-13 of the General Rules and Regulations of the Arkansas Oil and Gas Commission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **Statutes**

28 U.S.C. § 1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

COMES NOW the Plaintiff and submits its brief in support its response to Defendants' motion to dismiss.

## I.    INTRODUCTION

Plaintiff filed this shareholder's derivative action pursuant to Fed. R. Civ. P. 23.1 because XTO Energy Inc., engaged in a practice of improperly paying sales taxes to the State of Arkansas for goods and services relating to oil and gas wells in Arkansas that are exempt from sales tax under Arkansas law. Prior to filing the lawsuit, the Plaintiff demanded that the Defendants cease such payments and initiate the administrative process to obtain a refund of prior tax payments pursuant to Arkansas law which provides for such  refund.  (Letter of David A. Branscum, Def. Ex. B) Instead, the Defendants responded to the demand claiming that no overpayments were being made. (Letter of Frank G. McDonald, Def. Ex. C) Despite specific the Plaintiff's specific request for information explaining any denial and for access to pertinent books and records, no explanation of the investigation or the Defendants' basis for the denial were given.  ( Def. Ex. B) ; (Def. Ex. C)

The Defendants now seek to have this Court dismiss this action without the Plaintiff having the opportunity to discover these pieces of information.  Ironically, the Defendants criticize the Plaintiff for not pleading the very information which the Defendants failed to provide.  The falsity of Defendants' claim that XTO is not overpaying taxes indicates that an inadequate investigation was performed by the Defendants in response to Plaintiff's demand.  (Affidavit of David A. Branscum, Exhibit A) Because of the dearth of details regarding the investigation, it is not possible to determine or plead whether XTO's Officers and Directors are just uninformed due to an inadequate investigation or if they have failed to act in good faith to steward the corporation's assets by intentionally allowing the improper payment of taxes and by making misrepresentations about these facts to this shareholder.  In

1

either event, there is no factual basis upon which to shield them from liability through application of the business judgment rule. The Defendants' arguments regarding venue and the individual Defendants' culpability also rest upon their representations concerning information not yet available to the Plaintiff. The Plaintiff is entitled to discover this information prior to having its absence used to defeat its claims.

The instant motion is the attempt of XTO's Officers and Directors to use their own refusal to provide information to shield themselves – not only from liability for their failures in this matter, but also from having the details of their failures discovered by this Court. Under these circumstances, the Motion to Dismiss should be denied. At the least, Plaintiff is entitled to conduct discovery on the issues of (1) the reasonableness and due care (or lack thereof) of Defendants' investigation and denial of their claims; (2) the testimonial and documentary evidence that exists as to whether XTO has ever wrongfully paid sales tax to Arkansas, and the reasonableness (or lack thereof) of the failure of XTO to seek a refund of past sales taxes wrongfully paid to Arkansas.

## II.    ARGUMENTS AND AUTHORITIES

When ruling on a motion to dismiss for failure to state a claim, a court must accept as true all of the well-pleaded factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (*citing Swierkiewicz v. Sorema,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d. 1 (2002); *Scheuer v. Rhodes,* 416 U.S.232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974). *Federal law*, rather than state law sets the standard for dismissal under Fed. R.Civ.P. 12(b) (6). *Church of Scientology of Calif. v. Flynn,* 744 F.2d 694 at 696, n.2 (9th Cir. 1984). The court must make all reasonable inferences in the plaintiff's favor in reviewing the sufficiency of a complaint. *Timpanogos Tribe v. Conway,* 286 F.3d 1195,

1204 (10th Cir. 2002).   A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The issue is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support its claims.  *See Scheuer*, 416 U.S. at 236.  "[A ] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly, supra,* 550 U.S. at 556 (*citing Swierkiewicz v. Sorema N.A.* 534 U.S. 506, 508 n.1, 122 S.Ct. 992, 152 L.Ed.2d 1(2002).

"The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Ashcroft v. Iqbal,* __U.S. __, 129 S.Ct.1937, 1960, 173 L.Ed.2d 868 (2009).  Here, the Court is presented with a well-pleaded complaint that does not fall within the "time travel" or "trip to Pluto" exception, and thus all well-pleaded facts and reasonable inferences must be taken as true and construed in favor of Rathbone, LLC.

## A.    VENUE IS PROPER IN THE WESTERN DISTRICT OF OKLAHOMA.

The Defendants assertion that venue is improper in this District is incorrect.  The statute cited by the Defendants, 28 U.S.C. § 1391(a), specifically provides that venue is proper in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  § 1391(a)(2).  The Plaintiff is not obligated to show that all of the events at issue occurred in this judicial district:

> Venue may exist in more than one district and the plaintiff is not required to establish that his chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." Kirkpatrick v. The Rays Group, 71 F.Supp.2d 204, 212 (W.D.N.Y.1999) (citations omitted); Neufeld v. Neufeld, 910 F.Supp. 977, 986 (S.D.N.Y.1996).

3

*Country Home Products, Inc. v. Schiller-Pfeiffer, Inc.*, 350 F.Supp.2d 561, 568 (D.Vt. 2004).

XTO has publicized that its Oklahoma City Operations Office is the headquarters for its Mid-Continent Region, which includes its operations in Arkansas. *See* Web Page Map, Exhibit B; 2008 Annual Report at page 85, Exhibit C. The Arkansas Oil and Gas Commission requires that each entity conducting operations in Arkansas file an Organization Report which report is to include the entity's official mailing address for communications regarding those operations. *See* Rule B-13 of the General Rules and Regulations of the Arkansas Oil and Gas Commission. (Available online at http://www.aogc.state.ar.us/OnlineData/Forms/Rules and Regulations.pdf.) XTO has given its Oklahoma City office's address as its official address with the Arkansas Oil and Gas Commission. See "All Operators.XLS", Exhibit D (Available online at http://www.aogc.state.ar.us/operatorinfo.htm.) Certainly, the operations at issue in this case were managed out of that office, which is located just a few blocks from the United States Courthouse for the Western District of Oklahoma. *See* 2008 Annual Report at page 85, Exhibit C.

The Defendants have submitted an affidavit which, at first glance, purports to assert that its Oklahoma City Operations Office was entirely uninvolved in decisions related to the sales taxes paid in connection with its Arkansas operations. However, that assertion (unlike the other assertions in the affidavit) is qualified with the phrase "to my knowledge" rather than stated expressly: "To my knowledge, none of the events or omissions alleged in Plaintiffs Complaint occurred in the State of Oklahoma." *See* Defendant's Exhibit A at ¶ 7. This assertion is accompanied by a vague reference that decisions about payment of taxes were made in some other state, but fails to identify where these decisions were made: "All decisions relating to the payment of the taxes at issue in this case were made in a state other than Oklahoma." *See* Defendant's Exhibit A at ¶ 8. These equivocations may have raised a question of fact about where the events at issue took place, but do not rise to the level of proving that XTO divorced the assigned Operations Office from the actual operations.

Significantly, Mr. Frank McDonald, the affiant, does not demonstrate how he has personal knowledge of his statements. Unless he, the Senior Vice President, General Counsel & Assistant Secretary of XTO, was personally involved in all of the events or omissions at issue in this case, it is most probable that his affidavit is based upon hearsay rather than personal knowledge. Given Mr. McDonald's position with XTO, his equivocation about knowledge and the lack of specificity in his affidavit, it strains reason to accept that his affidavit is based upon personal knowledge of all of the events or omissions related to the payment of taxes at issue in this case.

The Plaintiff understands and embraces its obligation to show that venue is proper in this District, and further would not wish to bring this action in an improper venue. This action was brought in this district based on the publicly available information showing that Oklahoma City is the site of XTO's Operations Office for its Arkansas operations. Because the information necessary to show where these events took place is in the exclusive custody and control of the Defendants, the Plaintiff respectfully requests that this Court allow discovery on these issues prior to a ruling on the instant Motion. If the Defendants' suggestions are correct and this is an improper venue, the Plaintiff would respectfully request transfer to a proper venue based on the information discovered. 28 U.S.C. § 1406(a).

**B.    THE COMPLAINT PROPERLY STATES A SHAREHOLDER'S DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTIES.**

**1.    PLAINTIFF'S PRE-SUIT DEMAND WAS ADEQUATE.**

The Defendants claim that the Plaintiff's demand was insufficient, despite the fact that the XTO Officers and Directors responded to the demand, raising no questions about the subject matter at issue or the identity of the individuals within XTO who are charged with paying the taxes.

Having failed to raise this issue prior to this time is a waiver of any deficiency. Had there been a true inadequacy which prevented their investigation into the issues raised in the demand, that shortcoming would have and should have been explained. Further, this is not a case in which some unknown third party was causing injury to XTO – to the contrary, the demand explained that XTO itself was overpaying taxes and failing to seek refunds of taxes previously paid. Even without knowing which corporate representatives authorized the incorrect payments, application for refund of the payments from the State of Arkansas could be made with an accounting review and the filing of appropriate papers with the State of Arkansas.

The Delaware District Court, in *Allison v. General Motors Corp.*, 604 F.Supp. 1106 (D.Del. 1985), held as follows about the adequacy of a pre-suit notice:

> Adequacy of demand is tied to its purpose. . . Upon receipt of a demand, the Board of Directors must investigate and evaluate the charges in order to discharge its duty to the shareholders and manage corporate affairs responsibly. *Cf. Smith v. Van Gorkom*, 488 A.2d 858 at 872-873 (Del. 1985) (directors must inform themselves before making a decision). The purpose of a demand is to alert the Board of Directors so that it can take such corrective action, if any, as it feels is merited. [citation omitted] A demand is adequate if it satisfies that purpose.

*Allison* at 1117. Here the demand was adequate for the purpose: the demand explained that XTO was paying taxes it did not owe, the demand set out with specificity the tax rules implicated, the demand explained the legal action necessary to obtain refunds from the State of Arkansas, and the demand set forth the corrective action necessary to avoid overpayment of taxes in the future.

The Defendants claim that the notice to XTO's Officers and Directors violated a technical "standard" because it did not identify the people responsible for the wrongful conduct which was the subject of the demand. However, the *Allison* Court specifically characterized the criteria cited by the Defendants as "guidelines" when applying them to the facts of that case. *See Allison* at 1117 ("Application of these guidelines to the instant demand

....").  In light of the *Allison* Court's recognition that the adequacy of a demand must be weighed in light of its purpose and its specific holding that a demand is adequate if it alerts the Board of Directors such that it can take corrective action, a technical application of such guidelines would be inappropriate.  Where, as here, the Board is given adequate information about the facts, the wrongful acts or omissions are internal failures to follow tax rules, and the identities of the specific individuals who negligently failed to follow those rules are not available to shareholders without discovery, a technical application of such guidelines would not be appropriate.

Unfortunately, as is shown by the evidence submitted herewith, the result of the investigation claimed by Mr. McDonald in his letter is incorrect.  XTO has and continues to pay the taxes at issue, resulting in waste of millions of dollars of XTO's assets, and has failed to take legal action to recoup millions in previous overpayments as demanded by this Plaintiff.  The Directors, after having been advised of these overpayments and having been demanded to take legal action to remedy these failures, have failed to act in the best interests of XTO and its shareholders.

> **2.    THE COMPLAINT STATES A CLAIM FOR A SHAREHOLDER DERIVATIVE ACTION AS TO ALL DEFENDANTS**

The Complaint in this case meets each of the required elements of pleading under Fed.R.Civ.P. 23.1(b), sub-parts one through three: In paragraph 26, the required allegations of shareholder status are alleged, as required by sub-part one; In paragraph 27, the absence of collusion is alleged as required by sub-part two; In paragraph 28, the efforts to obtain the desired action are described with particularity, as are XTO's response and inaction.  The court must accept all reasonable inferences from the allegations of the Complaint.  In this case, the well-pleaded facts and

reasonable inferences from the Complaint raise questions of fact concerning the business judgment

exercised by the Defendants in this case:

A.  XTO's officers and directors hold the highest fiduciary duties of good faith, loyalty and due care to shareholders. (Complaint at p. 8, ¶ 31.)

B.  XTO has wrongfully and unreasonably paid multiple millions of dollars in sales taxes to the state of Arkansas. (Complaint at p. 5, ¶ 19.)

C.  XTO continues to wrongfully and unreasonably pay millions of dollars in sales taxes to the state of Arkansas. (Complaint at p. 6, ¶ 21.)

D.  XTO is entitled to a refund of multiple millions of dollars from the state of Arkansas for wrongfully paid taxes, with a 10% interest rate, for all claims for refund made within 36 months of the payment. (Complaint at p. 6, ¶ 22.)

E.  XTO has never sought a refund from the State of Arkansas. (Complaint  at p. 7, ¶ 24.)

F.  XTO's inaction has caused the corporation's shareholders to lose significant value because with each passing day that a refund is not sought, a portion of the refund claim becomes time-barred. (Complaint at p. 8, ¶ 29.)

G.  Plaintiff made pre-suit demand on XTO, requesting it cease making sales tax payments on exempt goods and services. (Complaint at p. 8, ¶ 28.)

H.  XTO rejected the demand, but did *not specifically deny* that it had never paid sales tax on exempt goods and services in Arkansas. (Letter of June 5, 2008  referenced in Complaint at p. 8, ¶ 28.)

I.  XTO rejected the demand, but did *not specifically deny* that it was entitled to a refund from the state of Arkansas. (Letter of June 5, 2008  referenced in Complaint at p. 8, ¶ 28.)

J.  There is no indication from XTO's denial that it ever investigated invoices or other documents to ascertain whether working interest owners had been charged for sales taxes on exempt goods and services in Arkansas. (Letter of June 5, 2008  referenced in Complaint at p. 8, ¶ 28.)

K.  There is no indication from XTO's denial that, after pre-suit demand,  it conducted any investigation whatsoever into (a) whether it had ever wrongfully paid sales tax on exempt goods and services in Arkansas, and (b) whether it was entitled to a refund from the state of Arkansas. (Letter of June 5, 2008  referenced in Complaint at p. 8, ¶ 28.)

Although the Defendants couch their arguments in terms of the detail plead by the Plaintiff

in the Complaint, the authorities they cite address the merits of the business judgment rule, not

simply pleading issues.  In Defendants' primary authority, *Spiegel v. Buntrock*, 571 A.2d 767 (Del.

1990), there is no mention of the adequacy of the Complaint to state a claim, rather the opinion

turned on the details of the Defendants' investigation into the issues raised in the demand – all of

which were available to the parties prior to the Court's ruling.  In *Spiegel*, actual evidence was

submitted to the Court that the Defendants had appointed an independent investigation committee of outside directors to investigate the Plaintiff's demand, the committee spent five months investigating the allegations, the committee was represented by an outside lawyer during the investigation, the committee interviewed "a great many people" inside and outside the corporation, the committee reviewed "volumes of documents" in its investigation, Mr. Spiegel's lawyer's informed the committee that the only basis for the demand was one article in the newspaper, and the committee had reported to the Board of Directors that it would not be in the corporation's best interests to pursue the litigation. *Spiegel*, 571 A.2d at 772. The Defendants in this case have brought forth no evidence that any investigation was made – indeed, the response made by the Defendants is based upon false information which indicates that little or no investigation was performed in the five days between the demand and the response.

The Court's holding in *Spiegel* simply does not support a dismissal of this case for failure to plead enough detail in the Complaint. Indeed, the *Spiegel* opinion highlights the deficiencies in the investigation performed by the Defendants into the demand in this case and their lack of good faith in investigating the waste of XTO's assets through overpayment of taxes. How could an investigation have been adequate if it failed to disclose that XTO was actually overpaying the taxes? How could the Defendants be acting in good faith when their response states they understand that they are obligated to take advantage of the tax exemptions, but are not doing it? Because the Plaintiff has plead that these taxes have been paid and are continuing to be paid, those allegations must be taken as true. The only logical inference to be drawn is that the Defendants have not conducted an adequate investigation to trigger the business judgment rule. Moreover, these facts lead to the inference that the Defendants are not acting in good faith, thus precluding the application of the business judgment rule.

The Plaintiff respectfully requests that this Court allow the Plaintiff the opportunity to discovery what, if any, investigation was performed in response to the demand in this case. Discovery into the investigation performed by Defendants has been found to be appropriate where the Defendants raise the business judgment rule as a defense. *See Fagin v. Gilmartin*, 432 F.3d 276, 285 n. 2 (3rd Cir. 2005) (found discovery to be appropriate where substantive issues regarding the investigation performed by the Defendants were raised in the motion to dismiss.). Where, as here, the Plaintiff requested that any denial of its demand be explained and that Plaintiff be given access to the pertinent books and records, but was denied these things, Defendants should not be rewarded for the lack of specificity that results from their having failed to provide the information.

### 3.     Appropriate Choice of Law is Unclear at this Stage of Litigation.

Defendants' motion assumes Delaware law governs all the issues pertinent to the motion. However, it is undisputed that this case involves a multistate controversy. Plaintiff is an Oklahoma LLC. Defendant XTO Energy, Inc. has its headquarters in Texas but carries on oil and gas operations within the states of Texas, Oklahoma and Arkansas among others. According to Arkansas' public records, all of the wells at issue in this case were managed by XTO's Oklahoma City office. Nevertheless, each of those wells is in Arkansas. An affidavit attached to defendant's motion to dismiss states that all decisions regarding the payment of Arkansas sales taxes were made in an unnamed state "other than Oklahoma." (Def. Ex. A at ¶¶ 8 and 9)

Under these circumstances, a federal court applies the state court choice of law rule. *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787 (Okla. 1991). Under Oklahoma law, the court may balance and analyze the interests in multistate controversies in deciding the law to be applied. *Id.*, at 796. At the present stage of this litigation it is unclear in which states the particular aspects of the transactions at issue occurred. Certainly, Oklahoma has a strong public policy interest in ensuring that Oklahoma stockholders are not needlessly subject to loss of value because of the malfeasance

of corporate directors and officers.  Arkansas and Texas arguably have interests as well.  Each of these states may have interests that predominate over that of Delaware, which has *no* contact with the operative facts of the case and is merely the state of incorporation of a firm headquartered in Texas and operating in Oklahoma and Arkansas.  Indeed, under Texas law, which is the alleged locus of XTO's tax department, a shareholder has a right to discovery concerning the investigation and good faith of Defendants' business judgment prior to a ruling on a motion to dismiss.  *Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 778 (Tex.App. 2008).

### 4.     Under Oklahoma, Delaware and Arkansas Law, Defendants Owe the Highest Fiduciary Duty to Plaintiff.

Regardless of which state law is ultimately found to apply,  American law is generally uniform in requiring that a board of directors owes the highest fiduciary duties to stockholders, including duties of due care, loyalty and good faith.  *Wilson v. Harlow,* 860 P.2d 793 at 798 (Okla. 1993).  *Emerald Partners v.  Berlin*, 787 A.2d 85, 91(Del. 2001).  Indeed, Arkansas law provides that individuals who serve as officers *and* directors are held to an even higher standard than the normal and demanding standards that apply to a fiduciary. *Hall v. Staha,* 314 Ark. 71, 858 S.W.2d 672, 676 (1993) *citing Raines v. Toney,* 228 Ark. 1170, 1178, 313 S.W.2d 802  (1958).  Under these exacting legal standards, XTO's incomplete and conclusory denial of  plaintiff's pre-suit demand should not be held sufficient to require dismissal of this action.

### 5.     XTO's demand denial is conclusory and silent on the issues of whether XTO ever wrongfully paid sales tax in Arkansas and whether XTO is entitled to a refund from the State of Arkansas. XTO is not entitled to cloak these issues from judicial inquiry behind the business judgment rule.

Reason dictates that application of the business judgment rule requires that the corporation has in reality *exercised some meaningful business judgment* with respect to plaintiff's claims.  *Aronson v. Lewis* 473 A.2d 805, 813 (Del. 1984).  However, XTO's demand denial is conclusory at best.  It is absolutely silent on the issue of whether any investigation was conducted into the

11

demand prior to the denial.  It is silent on whether XTO has *ever* wrongfully paid sales tax in Arkansas.  It is also silent on whether XTO is entitled to a refund from the State of Arkansas.  The defendant is not entitled to the presumption of the business judgment rule as to these issues.

Even under Delaware law, it is recognized that the court must inquire as to the independence and good faith of a corporate denial of a shareholder's quest for derivative litigation, and must also review the "reasonableness and good faith" of the corporation's investigation.  *Aronson v. Lewis,* 473 A.2d 805 at 813 (Del. 1984), *Zapata v. Maldonado,* 430 A.2d 779 (Del. 1981).

In the case at bar there is no scintilla of evidence that any investigation was performed by any committee of the board– or by any other person– into whether XTO has in the past erroneously paid sales taxes to Arkansas.  There is no indication of any investigation as to whether a refund is available to XTO from the state of Arkansas.  Under these circumstances, XTO is not entitled to the protections of the business judgment rule.  The court in *Zapata* noted that Delaware law sought a balance between interests of a bona fide stockholder, and the corporation :

> If, on the one hand, corporations can consistently wrest bona fide derivative actions away from well-meaning derivative plaintiffs through the use of the committee mechanism, the derivative suit will lose much, if not all, of its generally-recognized effectiveness as an intra-corporate means of policing boards of directors. . .

> The issues become solely independence, good faith, and *reasonable investigation.*

*Id.* at 786-787. (Emphasis supplied.)

Numerous other courts have explicitly held that pre-suit demand does not waive a shareholder's right to challenge the reasonableness of denial.  In *Behradrezaee v. Dashtara,* 910 A.2d 349 (D.C. Ct. App. 2006) the court found that plaintiff's pre-litigation demand on the corporation does not waive the right to assert the bias and lack of independence of the board.  In the case at bar, plaintiff ***specifically alleges that  XTO wrongfully continues to pay sales tax on exempt goods and services even after demand and denial.***  See Complaint at ¶ 28.  As noted above, XTO's

claim "denial" wholly fails to disclose any facts related to any investigation of plaintiff's claims. Moreover, it pointedly *omits* any denial that XTO has ever wrongfully paid sales tax in Arkansas during the past 36 months– the time frame in which a refund could still be sought.  Under these circumstances, plaintiffs complaint sufficiently alleges that the board of directors has breached its fiduciary duties of due care, loyalty and good faith.

Likewise, in *Stepak v. Anderson,* 20 F.3d 398 (11th Cir. 1994) the court held that plaintiff's complaint was sufficient to allege wrongful board refusal after pre-suit demand.  In so doing, the court wrote as follows:

> We take it as axiomatic that a board would not be acting consistently with its fiduciary duties were it to reject a shareholder demand based on an investigation and presentation by the alleged wrongdoers.

*Id.* at 405.  In this case, there is no information in the Defendants' denial letter to indicate who, if anyone performed any investigation.  Therefore, there is no way for this Court to address the *Stepak* situation in this case without Plaintiff's ability to conduct discovery.

### C.    THE COMPLAINT WARRANTS APPLICATION OF A MODIFIED BUSINESS JUDGMENT RULE OR OTHER ENHANCED LEVEL OF JUDICIAL SCRUTINY.

Of course, the *specific facts* of XTO's accounting practices, as well as any purported investigation of plaintiff's claims are known to defendants and unknowable to plaintiff.  This is undoubtedly the case in the vast majority of cases of demand refusal by corporate boards. It is this fact that prompted the New Jersey to adopt a modified business judgment rule in *In re  PSE & G Shareholder Litigation,* 173 N.J. 258, 801 A.2d 295 (2002.)  The New Jersey Supreme Court affirmed the trial court's fashioning of a business judgment rule that places  the initial burden of proof on the corporation– not the shareholder, quoting with approval the trial court's ruling:

> The court explained that "[r]equiring shareholders to allege facts with specificity without discovery places them in a position bordering on the impossible."

*In re PSE &G,* 801 A.2d at 312. The appellate court also applied a modified business judgment rule imposing *on the corporation* the initial burden to establish (1) the decision to reject or terminate a shareholder's suit was made by independent, disinterested board members; (2) the board acted in good faith in rejecting the shareholder's claim, and that (3) the board's decision was reasonable. *Id.,* at 312.

Perhaps most significant, the court held that shareholders must be permitted access to corporate documents and other discovery to ascertain what steps the directors took to inform themselves of the shareholder demand and the reasonableness of their decision. *Id.*

In *Janssen v. Flanagan,* 662 N.W. 2d 876 (Minn. 2003) the Minnesota Supreme Court disregarded a corporate special litigation committee's rejection of a shareholder's derivative action. In so doing, the court applied the modified business judgment rule described above in *In re PSE & G, supra.* The Minnesota court held that at a minimum, *the board* must establish that the corporate litigation committee acted in good faith and was sufficiently independent of the board of directors to dispassionately review the derivative lawsuit. *Janssen,* 662 A.2d at 888.

Importantly, the court also rejected the corporation's request that a second, "improved" investigation into the derivative action be considered. The *Janssen* court recognized that extending unlimited "do-overs" to corporations with respect to such investigations would in essence destroy the rights of shareholders. *Janssen,* 662 A.2d at 889-890. *See also, Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51 (1990). The court's attention is further directed to *Kloha v. Duda,* 226 F.Supp. 1342 (M.D. Fla. 2002), finding that defendant corporation had failed to establish the independence of its investigation and rejection of plaintiff's derivative suit demand.

The only Oklahoma case discussing this issue is *Beard v. Love,* 2007 OK CIV APP 118, 173 P.3d 796. Significantly, the Oklahoma appellate court found that summary adjudication of plaintiff's claims was not appropriate and that heightened judicial scrutiny beyond the business

14

judgment rule was required in that case. The court noted that plaintiff in her petition claimed that defendant breached his fiduciary duty to manage the corporation for the benefit of all shareholders. The court also observed that when a majority shareholder exercises his control to gain a benefit not shared with the minority shareholder, the burden shifts to him to prove the intrinsic fairness of the transaction. *Beard, supra* at 804.

In the case at bar, defendant essentially argues that its unsupported assertion of reasonableness and good faith should forever end this litigation– with no discovery– in the face of *specific* allegations that XTO continues to waste millions of dollars in exempt sales tax and continues to fail to seek a refund from the state of Arkansas. The argument strains the bounds of reason. Plaintiff asserts that the Rule 23.1 pleading demand requirement should not be interpreted as giving a corporation unfettered discretion to waste corporate assets, so long as a shareholder has made a demand on the corporation regarding the transactions from which the waste arises.

At the very least, plaintiff's complaint raises a mixed question of law and fact as to whether the "business judgment rule, an intermediate standard of enhanced judicial scrutiny, or the entire fairness analysis" should be applied here. *Beard v. Love,* 173 P.3d 796 at 804, *citing Emerald Partners v. Berlin*, 787 A.2d 85, 89 (Del. 2001).    In such a circumstance, dismissal under Fed.R.Civ.P. 12 (b)(6) should not occur.

**D.    AT A MINIMUM THE COURT SHOULD ALLOW DISCOVERY ON THE REASONABLENESS OF XTO'S INVESTIGATION AND DEMAND DENIAL.**

In these circumstances, plaintiff asserts that the business judgment rule should *not* be applied to end this litigation before *any* discovery regarding the reasonableness of XTO's rejection of the shareholder demand. This is especially true where plaintiff alleges facts that *specifically* contradict those recited in the demand rejection letter. Certainly, it cannot be said that *no set of facts could* be proved establishing XTO's liability to the shareholders in this case. As the complaint now stands,

discovery may confirm plaintiff's allegations that XTO has continued to pay sales tax it should not have paid. Also, discovery may confirm that XTO has failed to seek a timely refund from the state of Arkansas. Discovery may confirm that no meaningful investigation of plaintiff's demand took place.

The necessity of allowing discovery on the issue of the reasonableness of a shareholder's derivative demand refusal was recognized by the federal district court in Minnesota recently. In *Evans v. Paulson,* 2006 WL 3702669 (D. Minn.) The district court affirmed a magistrate's ruling in a shareholder's derivative action. The defendant corporation moved to dismiss the derivative actions, based on the investigation and recommendations of a special litigation committee (SLC). The court first noted the broad scope of discovery allowed under the Federal Rules of Civil Procedure. The court observed succinctly :

> At issue in this case is whether the SLC acted independently and in good faith in reviewing the derivative lawsuits. . . [the magistrate judge] found that the contested information is relevant to the issue of good faith, in particular, to the "adequacy and reliability of the information supplied to the SLC."

*Id.* The court's attention is further directed to *Klein v. FPL Group, Inc.,* 2003 WL 22768424 (S. D. Fla. 2003) allowing discovery of facts relating to defendant's investigation of pre-suit demand while defendant's motion to dismiss was pending.

Plaintiff's need to conduct discovery is perhaps best illustrated by Defendant's argument that– because Plaintiff has *not* specifically alleged self-dealing or intentional misconduct– defendant is entitled to the benefits of the business judgment rule. Again, the motivations behind XTO's wrongful payment of sales taxes are unknown to plaintiff. Absent some discovery, those motivations are literally *unknowable* to plaintiff. However, XTO's failure to explicitly state to plaintiff and to this court that it has never wrongfully paid sales tax speaks volumes. XTO's failure to explicitly state to plaintiff and to this court that it is not entitled to a refund from the state of

Arkansas cries out for further discovery, not the cloaking of XTO's acts and motivations from shareholders and this court.

> **E.    XTO'S ATTEMPT TO CLOAK DIRECTORS WITH IMMUNITY FOR THEIR NEGLIGENCE IN THE BYLAWS IS NOT APPROPRIATE TO CONSIDER ON A MOTION TO DISMISS UNDER FRCP 12 (B)(6).**

As noted above, the specific allegations of the complaint include that XTO continues to pay tax it does not owe are sufficient to defeat a motion under Federal Rule of Civil Procedure 12 (B) (6).    Moreover, the by-laws themselves are outside the scope of the complaint and the cited provision is in the nature of an affirmative defense that is not properly asserted in a motion to dismiss under Federal Rule of Civil Procedure 12 (B) (6). *Zeligson v. Hartman-Blair, Inc.* 135 F.2d 874 (10th Cir. 1948).

In addition,  Delaware law provides that corporate by-laws cannot insulate directors from liability for breach of any and all fiduciary duties. "Where a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, the director's actions are either 'not in good faith' or 'involve intentional misconduct' [and] fall outside the liability waiver provided under Disney's certificate of incorporation." *In re The Walt Disney Co. Derivative Litig.,* 852 A.2d 275 (Del. Ch. 2003).

Taking all well-pleaded facts as true, and all reasonable inferences therefrom in the light most favorable to plaintiff, the directors bear the risk of liability for breach of fiduciary duties beyond that of due care.  Plaintiff specifically alleges that XTO continues wrongful payment of sales taxes to Arkansas and continues to fail to seek a refund from the state.

Moreover, defendant has failed to cite any case applying Oklahoma's choice of law rules that has approved of Delaware's cloaking of directors with immunity for their own negligence.   It is an open question whether this point of Delaware law is consistent with Oklahoma's public policy.

*Bohannan v. Allstate Ins.Co.,* 820 P.2d 787 (Okla. 1991). At any rate XTO's directors bear the risk of breach of fiduciary duties beyond that of due care under the specific allegations of the complaint.

**III.**    **CONCLUSION**

This Court should deny the Defendants' motion to dismiss, as the Complaint properly states claims for relief against the Defendants. Alternatively, this Court should allow the Plaintiff to conduct discovery into the issues relating to venue and the issues of the Defendants' exercise of business judgment in the denial of the Plaintiff's demand.

Respectfully Submitted,

FOLIART, HUFF, OTTAWAY & BOTTOM

By _____*S/ David A. Branscum*_____
        Glen D. Huff - OBA #4449
        David A. Branscum - OBA #11768
        Robert D. Hoisington - OBA #15090
        201 Robert S. Kerr Avenue, 12th Floor
        Oklahoma City, Oklahoma 73102
        Telephone: (405) 232-4633
        Fax: (405) 232-3462

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 29th day of July, 2009, a true and correct copy of the foregoing instrument was electronically transmitted to the Clerk of the Court using the ECF System for filing mailed as follows:

Gradyon Dean Luthey, Jr.
dluthey@hallestill.com
Mark Banner
mbanner@hallestill.com
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
320 South Boston Avenue, Suite 200
Tulsa, OK 74103
(918) 594-0400
(918) 594-0505


          *S/ David A. Branscum*
David A. Branscum